Judge Frank Montalvo

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

F I L E D

2012 APR 11  PH 2: 14



| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>(2) ISMAEL ZAMBADA GARCIA<br>    aka "Mayo", | § CRIMINAL NO. EP-12-CR-<br>§<br>§<br>§<br>§ **S E A L E D**<br>§ **I N D I C T M E N T**<br>§<br>§ **CT 1**: 18 U.S.C. §1962(d) - RICO Conspiracy;<br>§ **CT 2**: 21 U.S.C. §§ 846 & 841(a)(1),<br>§ (b)(1)(A)(ii) & (vii) - Conspiracy to possess a<br>§ controlled substance, over 5 kilograms of<br>§ cocaine, and over 1000 kilograms of marihuana;<br>§ **CT 3**: 21 U.S.C. §§ 963, 952(a) & 960(a),<br>§ (b)(1)(B) & (G) - Conspiracy to import a<br>§ controlled substance, over 5 kilograms of<br>§ cocaine, and over 1000 kilograms of marihuana;<br>§ **CT 4:** 18 U.S.C. §1956(h) - Conspiracy to<br>§ launder monetary instruments;<br>§ **CT 5:** 18 U.S.C. §§ 2 & 924(o) - Conspiracy to<br>§ Possess Firearms In Furtherance of Drug<br>§ Trafficking Crimes and Aid and Abet;<br>§ **CTS 6 - 10:** 18 U.S.C. §§ 2 & 1959(a)(1) & (5)-<br>§ Violent Crimes in aid of racketeering activity,<br>§ and Aid and Abet,<br>§ Tex. Penal Code §§ 7.01, 7.02, 15.01, 15.02,<br>§ 19.02, and 19.03 - Conspiracy to Commit and<br>§ Commit, Murder and Kidnapping;<br>§ **CT 11:** 21 U.S.C. §848(e)(1)(A)- Murder While<br>§ Engaging In or Working In Furtherance of a<br>§ Continuing Criminal Enterprise or Drug<br>§ Trafficking;<br>§ **CT 12:** 21 U.S.C. §§ 848(b)(1) and (2)(A) -<br>§ Engaging in a Continuing Criminal Enterprise<br>§ in furtherance of Drug Trafficking;<br>§ **CT 13**: 18 U.S.C. § 956(a) - Conspiracy to Kill<br>§ In a Foreign Country; and<br>§ **CT 14:** 18 U.S.C. §§ 2 & 1201 - Kidnapping<br>§ and Aid and Abet.<br>§<br>§<br>§<br>§<br>§ |

# EP12CR0849

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

Defendants.                    §

THE GRAND JURY CHARGES:

## COUNT ONE

### The "Sinaloa Cartel" Enterprise

1.    At all times relevant to this Indictment, the Defendants,

(2)  ISMAEL ZAMBADA GARCIA, aka "Mayo",

2

and                                                                                          , and others

known and unknown, were members and associates of the Sinaloa Cartel, a criminal organization

whose members and associates engaged in: (a) the illegal trafficking of cocaine and marijuana;

(b) the laundering of drug proceeds; and (c) acts of violence, including, kidnaping, torture and

murder of those who lose or steal assets from, are disloyal to, or are perceived as enemies of the

Sinaloa Cartel, and which operated principally in the Western District of Texas, the Republic of

Mexico, and elsewhere in the United States.

      2.      The Sinaloa Cartel, including its leadership, membership, and associates,

constituted an "enterprise," as defined by Title 18, United States Code, Section 1961(4)

(hereinafter "the Enterprise")  that is to say, a group of individuals associated-in-fact.  The

Enterprise constituted an on-going organization whose members functioned as a continuing unit

for a common purpose of achieving the objective of the Enterprise.  This Enterprise was engaged

in, and its activities affected, interstate and foreign commerce.

## Purpose of the "Sinaloa Cartel" Enterprise

3.     The purpose of the Enterprise included the following:

a.     Enriching the members and associates of the Enterprise through, among other things, conspiracy to import and distribute illegal controlled substances, money laundering, and conspiracy to commit murder.

b.     Promoting and enhancing the Enterprise and the activities of its members and associates.

c.     Preserving and protecting the power, territory and profits of the Enterprise through the use of intimidation, violence, threats of violence, kidnaping, torture and murder.

d.     Keeping rival traffickers, potential informants, witnesses against the Enterprise, law enforcement, the media, and the public-at-large in fear of the Enterprise, and in fear of its members and associates through threats of violence and violence.

e.     Preserving the ongoing viability of the Enterprise by kidnaping, torturing and murdering those determined to be enemies of the Enterprise, disloyal to the Enterprise, or those who lose or steal Enterprise assets.

## Means and Methods of the "Sinaloa Cartel" Enterprise

4.     Among the means and methods by which the Defendants, and their associates, conducted and participated in the conduct of the affairs of the Enterprise were the following:

a.     Defendants, along with other members and associates of the Enterprise, coordinated with transportation cells to arrange for large quantities of cocaine and marijuana to be imported into the United States through various drug trafficking routes including the international bridges between Ciudad Juarez and El Paso, Texas, and the miles of open desert stretching out into the Juarez Valley, and oversaw the distribution of the marijuana and cocaine

in Texas and elsewhere in the United States;

   b.   Defendants, along with other members and associates of the Enterprise, jointly arranged for the proceeds of their drug trafficking activities collected in the United States to be smuggled back into Mexico;

   c.   Defendants, along with other members and associates of the Enterprise, committed, attempted and threatened to commit acts of violence, including kidnapping, torture and murder, to protect and expand the Enterprise's criminal operations;

   d.   Defendants, along with other members and associates of the Enterprise, organized, used and threatened to use physical violence against various individuals.

### Structure of the Enterprise

   5.   The Sinaloa Cartel is based in Culiacan, Sinaloa, Mexico, but operates in the Mexican state of Chihuahua, the Western District of Texas, and other states in Mexico and the United States.

   6.   The primary purpose of the Sinaloa Cartel is to smuggle large quantities of cocaine and marijuana, as well as other drugs, into the United States and distribute them to various destination cities in the United States. The Cartel's success is achieved by securing, maintaining and regulating transportation routes for drugs and drug proceeds between Mexico and the United States. In order to secure and maintain these lucrative "corridors," the members and associates of the Sinaloa Cartel commit acts of violence.

   7.   The Sinaloa Cartel comprises members of the and the ISMAEL "Mayo" ZAMBADA GARCIA Drug Trafficking Organizations (DTO). Regional lieutenants, and their cell members, oversee drug smuggling and money laundering activities, and employ and direct groups including the *Gente Nueva* ("New People")

5

and the gangs known as *Artistas Asesinos* ("Murder Artists", aka Los Doble A's, Doblados,

(AA)), and the "Mexicles", to engage in violent activities in furtherance of the objectives of the

Enterprise.  Each of the Defendants participated in the operation and management of the

Enterprise.  The enforcement operations for the Sinaloa Cartel generally are carried out by teams

of assassins, known in Spanish as *sicarios*.  Their enforcement activities include gathering

information or intelligence about competing drug organizations, including the Juarez Cartel lead

by Vicente Carrillo Fuentes, and its enforcement arm, known as La Linea and the Barrio Aztecas;

enforcing discipline among the members of or persons working on behalf of the Sinaloa Cartel,

such as those who could or would not account for lost loads of controlled substances or other acts

of perceived disloyalty; and committing acts of violence against competitors and errant cartel

members through such means as kidnaping, torture, and murder of the responsible person or his

or her family members.  Often, the murders involve extreme violence and a public display of the

victim, including mutilation and dismemberment of body parts in some ritualistic or symbolic

fashion and the display of banners bearing written warnings, known as a "*narco manta*" or

"*narco pinta.*"

       8.     The proceeds generated by trafficking in cocaine and marijuana are returned to the

Sinaloa Cartel through various methods of money laundering.  That money is then used by

leadership in the Sinaloa Cartel to pay its members and associates;  to reinvest in the acquisition,

production, and trafficking of drugs; to invest in the Enterprise by purchasing assets and

properties related to the daily function of the Sinaola Cartel, to include firearms, ammunition,

bullet-proof vests,  radios, telephones, uniforms, and vehicles.

### Roles of the Defendants

       9.     The Defendants participated in the operation and management of the Enterprise.

a.    Defendant,                                        is a co-leader of

the Sinaloa Cartel with ISMAEL "Mayo" ZAMBADA GARCIA.              and ZAMBADA

are responsible for the importation and distribution of thousands of kilograms of cocaine and

thousands of pounds of marijuana into and throughout the United States.  The proceeds from the

sale of those drugs are ultimately returned to            and ZAMBADA in Mexico.

and ZAMBADA supported the *Gente Nueva* in their war with the Juarez Cartel by supplying

money and weapons.  Some of            important lieutenants in Chihuahua and Durango

include:

and

b.    Defendant, ISMAEL "Mayo" ZAMBADA GARCIA, is a co-leader of the

Sinaloa Cartel with                                  .              and ZAMBADA are

responsible for the importation and distribution of thousands of kilograms of cocaine and

thousands of pounds of marijuana into and throughout the United States.  The proceeds from the

sale of those drugs are ultimately returned to            and ZAMBADA in Mexico.

and ZAMBADA supported the *Gente Nueva* in their war with the Juarez Cartel by supplying

money and weapons. Some of ZAMBADA's important lieutenants are:

c.    Defendant,

, is the top lieutenant for  ZAMBADA, and who manages ZAMBADA's

regional lieutenants in Chihuahua while operating out of Culiacan, Mexico.

d.    Defendant,                                  . is a former member of

7

the Juarez Cartel who broke away and allied with                when the Cartel war started.

_____ is a former Mexican Municipal police officer out of the Delicias

station. _____ was assigned by _____ to secure Juarez, the states of

Chihuahua and Durango, and Culiacan for the Sinaloa Cartel. At the beginning of the war,

_____ enforcement activities in Juarez. In

March 2011, _____ left the Sinaloa Cartel, and formed an independent DTO.

     e.    Defendant, _____

brother of _____, was in charge of the State of Durango for the Sinaloa Cartel.

_____ was responsible for the assassin squads, drug trafficking, and the

collection of drug proceeds. _____ is responsible for numerous acts of

kidnapping, torture and murder. In the Spring of 2011, _____ also left the

Sinaloa Cartel and joined his brother _____ in the formation of an

independent DTO.

     f.    Defendant, _____ was an independent

drug trafficker in the Villa Ahumada, Chihuahua, Mexico area prior to 2007/2008. At that time

_____ primarily trafficked in marijuana after paying "tax" to

_____ for permission to move drugs through the Juarez corridor into the

United States. When war broke out in Juarez, _____ and others formed the

*Gente Nueva*, and approached ZAMBADA and _____ for support against the Juarez Cartel.

In late 2007 or early 2008, at _____ direction, _____ became the regional

lieutenant in the Juarez area, responsible for the Cartel's enforcement operations.

_____ oversaw numerous assassin squads dedicated to fighting against La Linea and the

Barrio Aztecas on behalf of the Sinaloa Cartel. In the fall of 2008, the Cartel expanded

8

responsibilities to encompass all drug trafficking activities in the region.

coordinated cocaine and marijuana shipments into the United States for the Sinaloa Cartel through the Juarez corridor.            exclusively used the logo of a            on cocaine bundles to designate his ownership.            received drug proceeds on behalf of the Cartel, and used some of those proceeds to purchase large quantities of firearms that were imported into Mexico from the United States to support the Sinaloa Cartel's battle with the Juarez Cartel.  In furtherance of the Cartel's drug trafficking and money laundering activities,            directed and was responsible for numerous acts of violence, including but not limited to the following:

(1)    In September 2009, at            direction, he caused several persons to kidnap S.S. in Horizon City, Texas, a small community southwest of El Paso, Texas.  The kidnaping was the result of S.S. having lost approximately 670 pounds of marijuana owned by the Sinaloa Cartel to a seizure by law enforcement agents in Sierra Blanca, Texas, on August 5, 2009.  After the kidnaping, S.S. was taken to Ciudad Juarez, Mexico, where            interrogated him and ordered that he be killed.  On about September 8, 2009, S.S.'s mutilated body was found in Juarez; he had been beaten and strangled and his hands had been severed above the wrists and placed on his chest, to serve as a warning to those who might attempt to steal from the Cartel.

(2)    On May 7, 2010,            caused an individual in El Paso, Texas, to assist in the identification of R.M.V., a resident of Columbus, New Mexico, and the groom in a wedding in Ciudad Juarez, and several other persons, because of their association with the Juarez Cartel.  At            direction, the individual traveled to Juarez and was taken to the location of the wedding to identify R.M.V. and his brother J.M.V.  Upon

9

orders, R.M.V., his brother J.M.V., and his uncle, G.M.A. were kidnaped during R.M.V.'s wedding ceremony.  The three were tortured and murdered on                                  instructions.  Their bodies were found by Juarez police a few days later in the bed of an abandoned pickup truck.  A fourth person had been killed during the kidnapping from the wedding ceremony.

   g.  Defendant,                                                                    has distributed drugs for both the Juarez and Sinaloa Cartels.  When the Cartel war began,                    aligned with                    and the Sinaloa Cartel.                    is currently the Sinaloa Cartel Plaza boss over the Valle de Juarez, an area east of Ciudad Juarez.                    is responsible for overseeing drug security, drug distribution, weapons procurement, and receiving drug proceeds.                    also oversees several assassin squads, and is responsible for numerous acts of kidnapping, torture and murder.                    is a member of the *Gente Nueva*.

   h.  Defendant,                                                    , was the Station Commander for the Chihuahua State Police.  Prior to the cartel war,                    paid the tax on behalf of the Sinaloa Cartel granting them permission from the Juarez Cartel to move drugs through the Juarez plaza.                    reports to                    , and is the top lieutenant for ZAMBADA in the Juarez plaza.                    oversees security forces and warehouses in Juarez where thousands of kilograms of cocaine are unloaded prior to shipment into the United States.                    cell members included:

, and others.  Drug proceeds were returned to                    by his cell members.                    exclusively uses the logo of a cartoon character called                    on cocaine

bundles to designate his ownership.

        i.      Defendant,                                        , is a
former Ciudad Juarez Municipal Police Officer.                                        was one of
                        largest distributors, and supervised numerous Cartel members and associates
involved in Cartel activities.  In addition to drug trafficking,
was also involved in enforcement operations for the Cartel, and is responsible for the kidnapping,
torture and murder of several individuals.

        j.      Defendant,                                  , brother of
                        , is also a former Ciudad Juarez Municipal Police Officer.
                        is a core member of the                  cell in Juarez, and is
responsible for offloading thousand of kilograms of cocaine at                  warehouses in
Juarez, and then reloading the trailers with hundreds of weapons and millions of dollars in drug
proceeds.

        k.      Defendant,
is a former Chihuahua State Police Officer.                  is a large scale cocaine
distributor in the                  cell who is also known for his extreme acts of violence.  Prior to
the Cartel war,                        collected taxes from independent drug traffickers to be paid
to the Juarez Cartel for permission to move drugs through the Juarez plaza.

        l.      Defendant,                                        is the
half-brother of                                        , and a former Ciudad Juarez Municipal
Police Officer.                  is right hand man for                  , and oversees
warehouses in Juarez.

        m.      Defendant,                                  , is a former

11

Chihuahua State Police Officer.                    is a top cocaine distributor and cell leader for

.        Based on his unique cocaine packaging methods/techniques, both the Juarez and

Sinaloa Cartels allowed              and his associates to package their cocaine prior to importation

into the United States.

           n.     Defendant,                                        , is a core member

of                        cell in Juarez who participated in unloading and loading of cocaine, drug

proceeds, and firearms at                    warehouses in Juarez.

           o.     Defendant,                                      , is a large scale

cocaine distributor for the              cell.          is a core member of                    cell in

Juarez who participated in unloading and loading of cocaine, drug proceeds, and firearms at

warehouses in Juarez.

           p.     Defendant,                                                , was

right-hand man, who often coordinated cocaine and marijuana

shipments, the pick up of drug proceeds, and kidnappings and murders for

Since                          arrest,            has assumed his position of

leadership in Juarez for the Sinaloa Cartel.

           q.     Defendant,

was the personal body guard for                          who participated in numerous

kidnappings and murders as part of                      assassin squads.

is the brother of co-defendant,

           r.     Defendant,

, is a former Police Officer in the Chihuahua State Police Homicide

Unit.  At the beginning of the war,                                      was an assassin for

12

, and participated in several kidnappings and murders.

also worked for the                    cell in the warehouse activities.

    s.     Defendant,

                                            is one of

*sicarios*.

    t.     Defendant,

, is a trusted member of                    cell who oversees cocaine shipments from

Guadalajara to the United States through the Juarez corridor.                    is also an assassin.

    u.     Defendant,

trafficked cocaine through the Juarez plaza.

    v.     Defendant,                    , is a cocaine and

marijuana trafficker operating in the Juarez plaza for many years with his family.

and his associates worked with                    to transport cocaine and marijuana loads

into El Paso from Juarez.

    w.     Defendant,                    , is a top

lieutenant and trusted friend of                    who runs an assassin squad and

participates in drug trafficking activities.

    x.     Defendant,                    , is a former

Mexican Municipal police officer with                    at the Delicias station.  Works

for                    , in charge of an assassin squad operating in Juarez, and participates

in cocaine distribution.

13

## The Racketeering Conspiracy

10.     Beginning on or about January 1, 2000, and continuing to and including on or about April 11, 2012, both dates being approximate and inclusive, within the Western District of Texas, the Republic of Mexico and elsewhere, the Defendants,

### (2)  ISMAEL ZAMBADA-GARCIA, aka "Mayo",

and others known and unknown, being persons employed by and associated with the Sinaloa Cartel Enterprise, an enterprise described in paragraphs 1 through 9 of this Indictment, which engaged in, and the activities of which affected, interstate and foreign commerce, knowingly, and intentionally conspired, combined, confederated, and agreed together, and with others to the Grand Jury known and unknown, to violate Title 18, United States Code, Section 1962(c), that is

14

to say, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined in Sections 1961(1) and 1961(5) of Title 18, United States Code, consisting of multiple acts indictable under the following provisions of federal law:

    a.    18 U.S.C. Section 1956 (money laundering and conspiracy to launder monetary instruments);

    b.    18 U.S.C. Section 956(a)(1)(conspiracy to kill in a foreign country);

and multiple acts involving narcotics trafficking, including cocaine and marijuana, in violation of the following provisions of federal law:

    c.    21 U.S.C. Sections 846 and 841(a)(1)(b)(1)(A) (distribution and conspiracy to distribute controlled substances involving over five kilograms of cocaine and over 1000 kilograms of marijuana);

    d.    21 U.S.C. Sections 963, 952(a) and 960(a) and (b)(1) (importation and conspiracy to import controlled substances involving over five kilograms of cocaine and over 1000 kilograms of marijuana);

and multiple acts involving:

    e.    Murder, chargeable under Texas Penal Code Sections 7.01, 7.02, 15.01, 15.02, 19.02 and 19.03;

    f.    Kidnapping, chargeable under Texas Penal Code Sections 7.01, 7.02, 15.01, 15.02, and 20.04.

    11.    It was a further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

    All in violation of Title 18, United States Code, Section 1962(d).

## COUNT TWO
**Conspiracy to Possess with Intent to Distribute a Controlled Substance**
Title 21, U.S.C. §§ 846 and 841(a)(1), (b)(1)(A)(ii) and (vii)

12.     Beginning on or about January 1, 2000, and continuing to and including on or about April 11, 2012, both dates being approximate and inclusive, within the Western District of Texas, and elsewhere, the Defendants,

**(2)  ISMAEL ZAMBADA-GARCIA, aka "Mayo",**

knowingly and intentionally, conspired, combined, confederated, and agreed with others to the Grand Jury known and unknown, to commit offenses against the United States, in violation of Title 21, United States Code, Section 846, that is to say, they conspired to possess a controlled substance, which offense involved five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, with intent to distribute same,

16

and they conspired to possess a controlled substance, which offense involved 1000 kilograms or more of a mixture or substance containing a detectable amount of marijuana, a Schedule I Controlled Substance, with intent to distribute same.  All in violation of Title  21, United States Code, Sections 846 and 841(a)(1) and 841(b)(1)(A)(ii) and (vii).

## COUNT THREE
### Conspiracy to Import a Controlled Substance
Title 21, U.S.C. §§ 963 and 952(a) and 960(a), (b)(1)(B) and (G)

13.     Beginning on or about January 1, 2000, and continuing to and including on or about April 11, 2012, both dates being approximate and inclusive, within the Western District of Texas, the Republic of Mexico, and elsewhere, the Defendants,

**(2)  ISMAEL ZAMBADA-GARCIA, aka "Mayo",**

knowingly and intentionally, conspired, combined, confederated, and agreed with others to the Grand Jury known and unknown, to commit offenses against the United States, in violation of Title 21, United States Code, Section 963, that is to say, they conspired to import a controlled substance, which offense involved five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, into the United States from Mexico, and they conspired to import a controlled substance, which offense involved 1000 kilograms or more of a mixture or substance containing a detectable amount of marijuana, a Schedule I Controlled Substance, into the United States from Mexico.  All in violation of Title 21, United States Code, Sections 963, 952(a) and 960(a), (b)(1)(B) and (G).

## COUNT FOUR
### Conspiracy to Launder Monetary Instruments
(18 U.S.C. §1956(a)(2)(A) & (h))

14.    Beginning on or about January 1, 2000, and continuing to and including on or about April 11, 2012, both dates being approximate and inclusive, in the Western District of Texas, Republic of Mexico, and elsewhere, the Defendants,

**(2) ISMAEL ZAMBADA-GARCIA, aka "Mayo",**

did knowingly conspire with others known and unknown to the Grand Jury to transport and

transfer and attempt to transport and transfer monetary instruments and funds from a place inside

the United States to a place outside the United States, that is the Republic of Mexico, with the

intent to promote the carrying on of a specified unlawful activity, that is Distribution and

Conspiracy to Possess with the intent to Distribute a Controlled Substance, in violation of Title

18, United States Code, Section 1956(a)(2)(A) and (h).

## COUNT FIVE
### Conspiracy to Possess Firearms
### in Furtherance of any Crime of Violence or Drug Trafficking Crime
(18 U.S.C. § 924(o))

15.     Beginning on or about January 1, 2000, and continuing through and including on

or about April 11, 2012, both dates being approximate and inclusive, in the Western District of

Texas, Republic of Mexico, and elsewhere, Defendants,

**(2) ISMAEL ZAMBADA-GARCIA, aka "Mayo",**

knowingly combined, conspired, confederated, and agreed with others known and unknown to

the Grand Jury to commit offenses against the United States, that is, the Defendants conspired to

possess firearms in furtherance of the drug trafficking crimes charged in Counts Two and Three

of this Indictment, re-alleged herein, contrary to Title 18, United States Code, Sections 924(c)(1)

and 924(o).

**COUNT SIX**
**Violent Crimes in Aid of Racketeering**
(18 U.S.C. § 1959(a)(5))

16.    At all times relevant to this Indictment, the Sinaloa Cartel, as more fully described

in paragraphs 1 through 9 of Count I of this Indictment, which are re-alleged and incorporated by

reference as though set forth fully herein, constituted an enterprise as defined in Title 18, United

States Code, Section 1959(b)(2), namely, the Sinaloa Cartel, that is, a group of individuals

associated-in-fact which was engaged in, and the activities of which affected, interstate and

foreign commerce.  The Enterprise constituted an ongoing organization whose members

functioned as a continuing unit for a common purpose of achieving the objectives of the

Enterprise.

17.    At all times relevant to this Indictment, the above-described Enterprise, through

its members and associates, engaged in racketeering activity as defined in Title 18, United States

Code, Sections 1959(b)(1) and 1961(1), namely, multiple acts involving the felonious

20

manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing the controlled substances or listed chemicals, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A), 846, 952(a), 960(b)(1) and 963; multiple acts indictable under Title 18, United States Code 1956, Sections (a)(2)(A), (b) and (h)(money laundering); and multiple acts indictable under Title 18, United States Code 956(a)(1)(Conspiracy to commit murder abroad); and multiple acts involving murder and kidnapping in violation of Texas Penal Code: Murder, chargeable under Texas Penal Code, Sections 7.01, 7.02, 15.01, 15.02, 19.02, and 19.03; and Kidnapping, chargeable under Texas Penal Code, Sections 7.01, 7.02, 15.01, 15.02, and 20.04.

18.     Beginning on or about September 3, 2009, and continuing through and including on or about September 8, 2009, both dates being approximate and inclusive, within the Western District of Texas, the Republic of Mexico, and elsewhere, as consideration for the receipt of, and as consideration for a promise and an agreement to pay, anything of pecuniary value from the Sinaloa Cartel, and for the purpose of gaining entrance to and maintaining and increasing position in the Sinaloa Cartel, an Enterprise engaged in racketeering activity, the Defendants,

and others known and unknown to the Grand Jury, knowingly conspired to murder S.S., in violation of Texas Penal Code Sections 15.02 and 19.02.

All in violation of Title 18, United States Code, Section 1959(a)(5).

## COUNT SEVEN
### Violent Crimes in Aid of Racketeering
### Aid and Abet
### (18 U.S.C. §§ 2 and 1959(a)(1))

19.     Paragraphs 16 and 17 of Count Six of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

20.     Beginning on or about September 3, 2009, and continuing through and including on or about September 8, 2009, both dates being approximate and inclusive, within the Western District of Texas, the Republic of Mexico, and elsewhere, as consideration for the receipt of, and as consideration for a promise and an agreement to pay, anything of pecuniary value from the Sinaloa Cartel, and for the purpose of gaining entrance to and maintaining and increasing position in the Sinaloa Cartel, an Enterprise engaged in racketeering activity, the Defendants,

intentionally murdered S.S., in the course of committing and attempting to commit kidnapping, in violation of Texas Penal Code Sections 7.01, 7.02, 19.02, and 19.03(a)(2).

All in violation of Title 18, United States Code, Sections 2 and 1959(a)(1).

## COUNT EIGHT
### Violent Crimes in Aid of Racketeering
### (18 U.S.C. § 1959(a)(5))

21.     Paragraphs 16 and 17 of Count Six of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

22.     Beginning on or about September 3, 2009, and continuing through and including

on or about September 8, 2009, both dates being approximate and inclusive, within the Western District of Texas, the Republic of Mexico, and elsewhere, as consideration for the receipt of, and as consideration for a promise and an agreement to pay, anything of pecuniary value from the Sinaloa Cartel, and for the purpose of gaining entrance to and maintaining and increasing position in the Sinaloa Cartel, an Enterprise engaged in racketeering activity, the Defendants,

and others known and unknown, unlawfully and knowingly conspired to kidnap S.S., in violation of Texas Penal Code Sections 15.02 and 20.04(a)(4).

All in violation of Title 18, United States Code, Section 1959(a)(5).

## COUNT NINE
### Violent Crimes in Aid of Racketeering
### Aid and Abet
(18 U.S.C. §§ 2 and 1959(a)(1))

23.   Paragraphs 16 and 17 of Count Six of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

24.   Beginning on or about September 3, 2009, and continuing through and including on or about September 8, 2009, both dates being approximate and inclusive, within the Western District of Texas, the Republic of Mexico, and elsewhere, as consideration for the receipt of, and as consideration for a promise and an agreement to pay, anything of pecuniary value from the Sinaloa Cartel, and for the purpose of gaining entrance to and maintaining and increasing position in the Sinaloa Cartel, an Enterprise engaged in racketeering activity, the Defendants,

kidnapped  S.S., in violation of Texas Penal Code Sections 7.01, 7.02, and 20.04(a)(4).

All in violation of Title 18, United States Code, Sections 2 and 1959(a)(1).

## COUNT TEN
### Violent Crimes in Aid of Racketeering
(18 U.S.C. § 1959(a)(5))

25.     Paragraphs 16 and 17 of Count Six of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

26.     Beginning on or about May 7, 2010, and continuing through and including on or about May 10, 2010, both dates being approximate and inclusive, within the Western District of Texas, the Republic of Mexico, and elsewhere, as consideration for the receipt of, and as consideration for a promise and an agreement to pay, anything of pecuniary value from the Sinaloa Cartel, and for the purpose of gaining entrance to and maintaining and increasing position in the Sinaloa Cartel, an Enterprise engaged in racketeering activity, the Defendants,

and others known and unknown to the Grand Jury, unlawfully and knowingly conspired to murder R.M.V., J.M.V. and G.M.A., in violation of Texas Penal Code Sections 15.02 and 19.02.

All in violation of Title 18, United States Code, Section 1959(a)(5).

## COUNT ELEVEN
### Murder While Engaging In or Working In Furtherance of a Continuing Criminal Enterprise or Drug Trafficking
(21 U.S.C. § 848(e)(1)(A))

27.     Beginning on or about September 3, 2009, and continuing through and including on or about September 8, 2009, both dates being approximate and inclusive, in the Western District of Texas, the Republic of Mexico, and elsewhere, the Defendants,

### (2)  ISMAEL ZAMBADA-GARCIA, aka "Mayo",

while engaging in or working in furtherance of a Continuing Criminal Enterprise as described in Count Twelve, and while engaging in drug trafficking as described in Counts Two, and Three, counseled, commanded, induced, or procured the intentional killing of S.S., in violation of 21 U.S.C. 848(e)(1)(A); and

Furthermore, beginning on or about May 7, 2010, and continuing through and including on or about May 10, 2010, both dates being approximate and inclusive, in the Western District of Texas, the Republic of Mexico, and elsewhere the Defendants,

### (2)  ISMAEL ZAMBADA-GARCIA, aka "Mayo",

while engaging in or working in furtherance of a Continuing Criminal Enterprise as described in Count Twelve, and while engaging in drug trafficking as described in Counts Two, and Three, counseled, commanded, induced, or procured the intentional killing of R.M.V., J.M.V., and G.M.A., in violation of 21 U.S.C. § 848(e)(1)(A).

## COUNT TWELVE
### Engaging in a Continuing Criminal Enterprise
### in furtherance of Drug Trafficking
### (21 U.S.C. §§ 848 (b)(1) and (b)(2)(A))

28.      Beginning on or about January 1, 2000, and continuing to and including on or about April 11, 2012, both dates being approximate and inclusive, in the Western District of Texas, the Republic of Mexico, and elsewhere, the Defendants,

### (2)  ISMAEL ZAMBADA-GARCIA, aka "Mayo",

did engage in a  Continuing Criminal Enterprise, that is these Defendants conspired to distribute and to possess with intent to distribute more than 150 kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 846, and conspired to import from the Republic of Mexico to the United States more than 150 kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 963, which were part of a continuing series of such violations, as alleged in Counts Two and Three, in which these Defendants were the principle administrators, organizers, and leaders of more than five (5) other persons participating in this Continuing Criminal Enterprise, and that Defendants,

### (2)  ISMAEL ZAMBADA-GARCIA, aka "Mayo",

obtained substantial income and resources from this Continuing Criminal Enterprise.

All in violation of Title 21, United States Code, Sections 848(b)(1) and (b)(2)(A).

### COUNT THIRTEEN
### Conspiracy to Kill In a Foreign Country
(18 U.S.C. § 956(a)(1))

29.     Beginning on or about May 7, 2010, and continuing through and including on or about May 10, 2010, both dates being approximate and inclusive, in the Western District of Texas, Defendants,

and others known and unknown to the Grand Jury, at least one of whom having been within the jurisdiction of the United States, knowingly, willfully, and unlawfully conspired with one another to commit outside the United States an act that would constitute the offense of murder if committed in the special maritime and territorial jurisdiction of the United States, that is, the kidnapping and murders of R.M.V., J.M.V., and G.M.A., and one or more of the conspirators committed an act within the jurisdiction of the United States to effect an object of the conspiracy.

All in violation of Title 18, United States Code, Section 956(a)(1).

## COUNT FOURTEEN
### Kidnapping and Aid and Abet
### (18 U.S.C. §§ 1201(a)(1) and 2)

30.     Beginning on or about September 3, 2009, and continuing through and including on or about September 8, 2009, both dates being approximate and inclusive, in the Western District of Texas and elsewhere, the Defendants,

aided and abetted, did unlawfully kidnap, abduct, seize, confine and carry away a person, to wit: SS, and willfully transport the victim in foreign commerce from the State of Texas to the State of Chihuahua, Mexico, and hold him for reward and otherwise, during which a death occurred, in violation of Title 18, United States Code, Sections 1201(a)(1) and 2.

A TRUE BILL.

ORIGINAL SIGNATURE
REDACTED PURSUANT TO
E-GOVERNMENT ACT OF 2002

FOREPERSON OF THE GRAND JURY

ROBERT PITMAN
UNITED STATES ATTORNEY

BY:

Assistant U.S. Attorney