**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** § | |
| § | |
| v. § | **CAUSE NO. EP:12-CR-849(2)-KC** |
| § | |
| **(2) ISMAEL ZAMBADA GARCIA** § | |
| a/k/a "Mayo" § | |

**ORDER**

On this day, the Court considered the Government's Motion for an Initial Appearance and Tolling of Speedy Trial Provisions ("Motion"), ECF No. 1324. For the following reasons, the Motion is **DENIED**.

**I.   BACKGROUND**

   **A.   Western District of Texas Proceedings**

Defendant Ismael Zambada Garcia, along with twenty-three others, was indicted by a grand jury in the Western District of Texas ("W.D. Tex.") on April 11, 2012. Redacted Indictment, ECF No. 54. Zambada is accused of committing a raft of crimes as one of the two co-leaders of the Sinaloa Cartel, a drug trafficking organization based in Culiacan, Sinaloa, Mexico, which operates throughout the United States and Mexico. *Id.* at 5, 7. Of the Indictment's fourteen counts, seven pertain to Zambada. *See generally id.* These charges include Count One, conspiracy to engage in racketeering activity; Count Two, conspiracy to possess controlled substances (cocaine and marijuana) with the intent to distribute; Count Three, conspiracy to import controlled substances (cocaine and marijuana); Count Four, conspiracy to launder monetary instruments; Count Five, conspiracy to possess firearms in furtherance of drug trafficking crimes; Count Eleven, murder while engaging in or working in furtherance of a continuing criminal enterprise or drug trafficking; and Count Twelve, engaging in a continuing

criminal enterprise in furtherance of drug trafficking.  *Id.*

Two days after the grand jury returned the Indictment, a warrant was issued for Zambada's arrest on the W.D. Tex. charges.  Arrest Warrant, ECF No. 147.  Over a decade later, on July 25, 2024, Zambada was arrested on the 2012 W.D. Tex. Arrest Warrant.  Arrest Warrant Returned Executed, ECF No. 1288.  There is some ambiguity as to the place of arrest.  The Executed Warrant states that Zambada was arrested in El Paso, Texas.[1]  *Id.*  But both parties represent in their briefing that Zambada was arrested in the District of New Mexico ("D.N.M."), which is immediately adjacent to the W.D. Tex.  Mot. 2; Resp. 1, ECF No. 1326.  As discussed below, the Court's decision on the Motion does not differ whether Zambada was arrested in the D.N.M. or the W.D. Tex.

The following day, July 26, Zambada was brought before United States Magistrate Judge Anne T. Berton for an initial appearance on the W.D. Tex. charges, at which he was ordered detained without bond, *see* July 26, 2024, Minute Entry, ECF No. 1283.  Zambada later entered a plea of not guilty to the charges in the W.D. Tex. Indictment and waived his right to a detention hearing and to appear for his arraignment in the W.D. Tex.  *See* Waiver Personal Appearance Arraignment, ECF No. 1286; Waiver Detention Hr'g, ECF No. 1287.  Zambada next appeared before this Court for a status conference on August 1, 2024, *see* Aug. 1, 2024, Minute Entry, ECF No. 1313, and is currently scheduled for another status conference on September 9, 2024, *see* Aug. 1, 2024, Order, ECF No. 1314.

---

[1] On July 25, 2024, United States Attorney General Merrick B. Garland also stated publicly that Zambada was "arrested today in El Paso, Texas." *Attorney General Merrick B. Garland Statement on Arrests of Alleged Leaders of the Sinaloa Cartel Ismael Zambada Garcia (El Mayo) and Joaquin Guzman Lopez*, U.S. Dep't of Justice (July 25, 2024), https://www.justice.gov/opa/pr/attorney-general-merrick-b-garland-statement-arrests-alleged-leaders-sinaloa-cartel-ismael.

### B.    Other Indictments

In addition to the W.D. Tex. charges, Zambada has been indicted in at least five other federal judicial districts: the District of Columbia, the Eastern District of New York ("E.D.N.Y."), the Northern District of Illinois, the Southern District of California, and the Central District of California.  Reply 1–2 & n.2, ECF No. 1327.  Some of these charges predate the W.D. Tex. charges, while others came later.  *Id.*  Zambada was indicted as early as 2003 in the District of Columbia.  *Id.* (citing *United States v. Zambada-Garcia*, No. 1:03-cr-34 (D.D.C.)).

In the E.D.N.Y., Zambada was first indicted in 2009.  *Id.*  He has since been named in several superseding indictments, *id.*, most recently on February 15, 2024, Superseding Indictment, *United States v. Zambada Garcia*, No. 1:09-cr-466 (E.D.N.Y. Feb. 15, 2024), ECF No. 720 ("E.D.N.Y. Indictment").  There, Zambada is charged with Count One, continuing criminal enterprise; Count Two, international cocaine, heroin, methamphetamine, marijuana and fentanyl manufacture and distribution conspiracy; Count Three, cocaine importation conspiracy; Count Four, cocaine distribution conspiracy; Count Five, international distribution of cocaine; Count Six, cocaine distribution; Counts Seven through Fifteen, international distribution of cocaine; Count Sixteen, possession of firearms in furtherance of drug trafficking crimes; and Count Seventeen, conspiracy to launder narcotics proceeds.  E.D.N.Y. Indictment.  A warrant was issued for Zambada's arrest in the E.D.N.Y. case, and a certified copy of that warrant has been provided to the United States District Clerk for the W.D. Tex., El Paso Division.  Mot. 1.

### C.    The Government's Motion

On August 15, 2024, three weeks after Zambada's arrest on the W.D. Tex. Warrant, the Government filed this Motion.  The Government asks the Court to schedule an initial appearance for Zambada on the E.D.N.Y. charges.  Mot. 1–3.  The Government anticipates that Zambada

3

will subsequently "be ordered removed to the [E.D.N.Y] to face charges in that District prior to continuing with the [W.D. Tex.] charges." Mot. 3. Therefore, the Government also requests that the Court exclude from its Speedy Trial Act calculations in this case all time spent prosecuting the case in the E.D.N.Y. *Id.*

The Court took the Motion under advisement and ordered Zambada to file a response within eleven days, in accordance with the Local Rules. Aug. 15, 2024, Order (citing W.D. Tex. L.R. CR-47(b)), ECF No. 1325. Zambada timely filed a Response in opposition to the Motion. The Government timely filed a Reply. Zambada obtained leave of Court to file an additional brief in opposition no later than September 3, 2024. Aug. 28, 2024, Text Order. However, that deadline elapsed, and Zambada did not file an additional brief.

## II.   DISCUSSION

The Government's request for an initial appearance on the E.D.N.Y. charges relies exclusively on Rule 5 of the Federal Rules of Criminal Procedure. Mot. 1–3. Under that Rule, the Government argues, "it is mandatory that the defendant be transferred to E.D.N.Y. to be arraigned on the fifth superseding indictment pending there." Reply 4. Zambada opposes the Government's request, arguing that his initial appearance has already occurred in connection with the W.D. Tex. charges, and Rule 5 provides no basis on which to hold a successive initial appearance and transfer on the E.D.N.Y. charges. *See* Resp. 4–6.

### A.   Rule 5 Standard

Two portions of Rule 5 are pertinent to the Court's analysis. First, the Rule states that, "[i]n [g]eneral," "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge, or before a state or local judicial officer as Rule 5(c) provides, unless a statute provides otherwise." Fed. R. Crim. P. 5(a)(1)(A). Rule

4

5(c), in turn, specifies rules for the "Place of Initial Appearance" and "Transfer to Another District":

>    (1) *Arrest in the District Where the Offense Was Allegedly Committed.* If the defendant is arrested in the district where the offense was allegedly committed:
>
>    (A) the initial appearance must be in that district; and
>
>    (B) if a magistrate judge is not reasonably available, the initial appearance may be before a state or local judicial officer.
>
>    (2) *Arrest in a District Other Than Where the Offense Was Allegedly Committed*. If the defendant was arrested in a district other than where the offense was allegedly committed, the initial appearance must be:
>
>    (A) in the district of arrest; or
>
>    (B) in an adjacent district if:
>
>    (i) the appearance can occur more promptly there; or
>
>    (ii) the offense was allegedly committed there and the initial appearance will occur on the day of the arrest.
>
>    (3) *Procedures in a District Other Than Where the Offense Was Allegedly Committed.* If the initial appearance occurs in a district other than where the offense was allegedly committed, the following procedures apply:
>
>    (A) the magistrate judge must inform the defendant about the provisions of Rule 20;
>
>    (B) if the defendant was arrested without a warrant, the district court where the offense was allegedly committed must first issue a warrant before the magistrate judge transfers the defendant to that district;
>
>    (C) the magistrate judge must conduct a preliminary hearing if required by Rule 5.1;
>
>    (D) the magistrate judge must transfer the defendant to the district where the offense was allegedly committed if:
>
>    (i) the government produces the warrant, a certified copy of the warrant, or a reliable electronic form of either; and
>
>    (ii) the judge finds that the defendant is the same person named in the indictment, information, or warrant; and
>
>    (E) when a defendant is transferred and discharged, the clerk must promptly transmit the papers and any bail to the clerk in the district where the offense was allegedly committed.

In sum, Rule 5 requires that a defendant be brought before a judicial officer for an initial appearance promptly following his arrest. Fed. R. Crim. P. 5(a)(1)(A). The place of initial

appearance is determined by the place of arrest, and if that place is in a district other than where the offense was allegedly committed, the defendant is ordinarily transferred to the district of the offense. Fed. R. Crim. P. 5(c).

### B.     Rule 5 Analysis

In this case, Zambada was arrested in either the W.D. Tex. or the D.N.M. *See* Arrest Warrant Returned Executed; Mot. 2; Resp. 1. And he was arrested on a warrant issued in connection with the W.D. Tex. Indictment.[2] Arrest Warrant Returned Executed. In accordance with Rule 5(a)(1)(A), the initial appearance was held the following day. July 26, 2024, Minute Entry. And the initial appearance was properly held in the W.D. Tex.; either (1) because Zambada was arrested in the W.D. Tex., the same district in which he is charged, Fed. R. Crim. P. 5(c)(1)(A), or (2) because Zambada was arrested in the D.N.M., a neighboring district, and the initial appearance could occur more promptly in the W.D. Tex.,[3] Fed. R. Crim. P. 5(c)(2)(B)(i). Neither Zambada nor the Government dispute that these Rule 5 procedures were properly executed. *See generally* Mot.; Resp.; Reply.

But the Government argues that Rule 5 also now requires that a second, initial appearance be held on the E.D.N.Y. charges, after which physical custody of Zambada must be transferred to the E.D.N.Y. Reply 4. Zambada opposes any such appearance and transfer. *See generally* Resp. The Rule itself does not explicitly account for a situation like this, in which a

---

[2] To the extent there were any doubt, it is mandatory for the Court to issue a warrant for an indicted defendant. Fed. R. Crim. P. 9(a). And when an indicted defendant is arrested and "first appears before the court, the judge must proceed under Rule 5." Fed. R. Crim. P. 9(c)(3).

[3] It has been widely reported that Zambada arrived in the United States "at an airport in Santa Teresa, New Mexico" before being taken to El Paso and placed under formal arrest. *See, e.g.*, *Sinaloa Cartel leaders arrested in El Paso*, El Paso Matters (July 25, 2024), https://elpasomatters.org/2024/07/25/el-paso-sinaloa-cartel-arrests-ismael-zambada-garcia-joaquin-guzman-lopez-merrick-garland/. The Court takes judicial notice that the courthouse for the El Paso Division of the W.D. Tex. is significantly closer than any divisional courthouse of the D.N.M. to the Doña Ana County International Jetport in Santa Teresa.

defendant faces charges in multiple federal judicial districts.  *See generally* Fed. R. Crim. P. 5.  Instead, the Rule sets up a dichotomy: either the initial appearance is held in the district where "the offense was allegedly committed," or it is not.  Fed. R. Crim. P. 5(c).  If the defendant's initial appearance is held in the district where the offense was allegedly committed, he remains there to face the offense charged.  But if the initial appearance is held elsewhere, then in most cases, "the magistrate judge must [then] transfer the defendant to the district where the offense was allegedly committed."  Fed. R. Crim. P. 5(c)(3)(D).

Although there are undoubtedly many instances like this, in which a defendant faces open indictments in multiple judicial districts, Rule 5 appears to contemplate only one initial appearance per arrest.  The Rule describes "the district" in which "the offense" is charged, and the holding of "the initial appearance," always using the definite article and a singular noun.  Rule 5's use of "the offense" tracks the language in the Rules on warrants—a warrant "must describe *the offense* charged in the indictment or information."  Fed. R. Crim. P. 9(b)(1) (emphasis added); *see also* Fed. R. Crim. P. 4(b)(1)(B) ("A warrant must . . . describe *the offense* charged . . .") (emphasis added).  Courts read the Federal Rules "in their most natural sense and as parts of a broader whole."  *United States v. 101 Houseco, LLC*, 22 F.4th 843, 848 (9th Cir. 2022) (citations omitted).  The Court thus concludes that when Rule 5 speaks to "the district where the offense was allegedly committed" or "a district other than where the offense was allegedly committed," it means "the offense" specified in the warrant on which the defendant was arrested—here, the W.D. Tex., not the E.D.N.Y.

This conclusion comports with the overall structure of Rule 5, under which the obligation to hold an initial appearance is triggered by an arrest.  Fed. R. Crim. P. 5(a)(1)(A) ("A person making *an arrest* within the United States must take the defendant without unnecessary delay

7

before a magistrate judge, or before a state or local judicial officer as Rule 5(c) provides, unless a statute provides otherwise.") (emphasis added).

Many judicial decisions confirm that the plain language of Rule 5(a)(1)(A) means what it says—defendants must have an initial appearance only after they are arrested by federal law enforcement. *See, e.g.*, *United States v. Alvarez-Sanchez*, 511 U.S. 350, 358 (1994) ("Plainly, a duty to present a person to a federal magistrate does not arise until the person has been arrested for a federal offense." (citing Fed. R. Crim. P. 5(a)) (emphasis omitted)). The existence of an "indictment and issuance of an arrest warrant," alone, do not trigger Rule 5's requirement to bring a defendant before a federal judicial officer. *United States v. Gonzalez*, 764 F.3d 159, 167–68 (2d Cir. 2014). Nor does the delivery of an indictment and warrant to the jailer of a defendant who is incarcerated on other charges. *United States v. Lowry*, --- F.4th ----, 2024 WL 3819783, at *2 (8th Cir. Aug. 15, 2024). That an arrest—and only an arrest—can trigger Rule 5 procedures is unsurprising, given that Rule 5 is largely a codification of "the common-law rule of 'prompt presentment,' which required that an officer take *an arrested person* before a magistrate 'as soon as he reasonably could.'"[4] *United States v. Boche-Perez*, 755 F.3d 327, 333 (5th Cir. 2014) (emphasis added) (quoting *Corley v. United States*, 566 U.S. 303, 306 (2009)).

Here then, neither the existence of the E.D.N.Y. indictment and unexecuted warrant, *Gonzalez*, 764 F.3d at 167–68, nor the delivery of those documents to authorities in the W.D. Tex., *Lowry*, 2024 WL 3819783, at *2, triggered Rule 5 anew, because neither constitutes an

---

[4] Rule 5 is also triggered by a defendant's voluntary appearance in response to a summons. Fed. R. Crim. P. 5(a)(3). But the Government does not argue that this provision applies to Zambada, who has not been summoned and is under arrest. *See generally* Mot.; Reply. In any event, a summons "must require the defendant to appear before a magistrate judge at a stated time and place." Fed. R. Crim. P. 4(b)(2). Therefore, Rule 5(c), which governs the place of initial appearance, and which furnishes the basis for the Government's argument, applies by its plain terms only to initial appearances upon arrests, not summonses, for which the place of appearance is a given.

arrest. Zambada was arrested on the W.D. Tex. warrant, and he remains in custody on that warrant. By holding an initial appearance on the W.D. Tex. charges, the Court fulfilled its obligations under Rule 5. Because Zambada has not been arrested on an E.D.N.Y. warrant, Rule 5 does not require, nor even authorize, the Court to hold an additional, initial appearance on the E.D.N.Y. charges.

### 1.     The *Kelly* case

The Government offers scant authority for its contrary position. In its Motion, the Government references no caselaw whatsoever in support of its Rule 5 analysis. *See generally* Mot. And in the Reply, despite describing its request as a "routine[]" and "usual practice,"[5] the Government cites only one example of such a practice occurring. Reply 4 (citing Minute Entry, *United States v. Kelly*, No. 1:19-cr-567 (N.D. Ill. July 18, 2019), ECF No. 29 (the "*Kelly* Minute Entry")). There, the defendant was indicted and arrested in the Northern District of Illinois ("N.D. Ill."), where he had an initial appearance, all on July 11, 2019. Indictment, *United States v. Kelly*, No. 1:19-cr-567 (N.D. Ill. July 11, 2019), ECF No. 1; Order, *United States v. Kelly*, No. 1:19-cr-567 (N.D. Ill. July 11, 2019), ECF No. 8; Bench Warrant Returned Executed, *United States v. Kelly*, No. 1:19-cr-567 (N.D. Ill. July 11, 2019), ECF No. 21. A week later, citing Rule 5, the N.D. Ill. ordered the defendant transferred to the E.D.N.Y. for an arraignment on separate charges there, after which he was to be returned to the N.D. Ill. for his next appearance in that court. *Kelly* Minute Entry.

Certainly, the *Kelly* case is an example of a court following the sort of procedure that the

---

[5] Had Zambada been arrested in the W.D. Tex. on an E.D.N.Y. warrant, this would undoubtedly be a routine matter, requiring a straightforward application of Rules 5(c)(2)(A) and 5(c)(3) to hold the initial appearance here and then send Zambada to the E.D.N.Y. But again, Zambada was arrested in the W.D. Tex. on a W.D. Tex. warrant, for which an initial appearance was then held. Under these circumstances, holding a successive initial appearance on other, out-of-district charges is far from routine.

Government requests. But the Court is not persuaded that it should authorize a similar course here, for four reasons. First, the record in the *Kelly* case provides no rationale for the court's decision. The document cited by the Government was entered by the Clerk of Court and reads, in its entirety:

> MINUTE entry before the Honorable Harry D. Leinenweber: Pursuant to Federal Rule of Criminal Procedure 5(c)(3)(D), the Court orders that the United States Marshals Service transfer Defendant Robert Kelly to the Eastern District of New York for arraignment on United States v. Robert Sylvester Kelly, 19−286 (S−1) (AMD), scheduled for 8/2/19. After his arraignment takes place, the Marshals Service is ordered to transfer Kelly back to the Northern District of Illinois in advance of Kelly's appearance before this Court on 9/4/19.

*Kelly* Minute Entry.

As discussed above, the plain language of Rule 5 and interpretive decisions by United States Courts of Appeals indicate that an initial appearance should only be held following an arrest, and that it should be held on the offense charged in the executed warrant. The opinions of other district courts have no precedential effect and are only authoritative "to the extent [their] reasoning is relevant and persuasive." *ARM Props. Mgmt. Grp. v. RSUI Indem. Co.*, No. 1:07-cv-718-SS, 2011 WL 13175076, at *2 (W.D. Tex. May 16, 2011) (first citing *United States v. Articles of Drug Consisting of 203 Paper Bags*, 818 F.2d 569, 572 (7th Cir. 1987); and then citing *Alperin v. Vatican Bank*, 410 F.3d 532, 546 (9th Cir. 2005)). Because it contains no reasoning, the *Kelly* Minute Entry does not persuade the Court to alter its analysis.

Second, there is no indication from the docket in either the N.D. Ill. or the E.D.N.Y. that the *Kelly* defendant opposed the use of Rule 5 to transfer him to the E.D.N.Y. Here, Zambada opposes the Government's motion. The judicial process relies on the parties to present issues and arguments for the court's consideration. *Cf. United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) ("Our system is designed around the premise that parties represented by competent

counsel know what is best for them and are responsible for advancing the facts and argument entitling them to relief." (cleaned up)). Therefore, the fact that a practice has occurred when unopposed is, without more, "wholly unpersuasive" of whether it should be permitted to occur over another party's opposition. *See, e.g.*, *Datanet LLC v. Dropbox Inc.*, No. 6:22-cv-1142-OLG-DTG, 2023 WL 9005604, at *3 (W.D. Tex. Dec. 28, 2023).

Third, after the July 18, 2019, transfer of the *Kelly* defendant to the E.D.N.Y., the cases proceeded in both jurisdictions simultaneously. The docket sheets reflect regular hearings, motions, and orders in both cases for the following two to three years. For example, a hearing was held in the E.D.N.Y. on February 6, 2020, and in the N.D. Ill. on March 5, 2020. *See* Minute Entry, *United States v. Kelly*, No. 1:19-cr-286 (E.D.N.Y. Feb. 6, 2020); Order, *United States v. Kelly*, No. 1:19-cr-567 (N.D. Ill. Mar. 5, 2020), ECF No. 102. Around that same time, several motions were pending in each case. *See, e.g.*, Mot. Strike & Dismiss, *United States v. Kelly*, No. 1:19-cr-286 (E.D.N.Y. Mar. 2, 2020), ECF No. 42; Mot. Produce, *United States v. Kelly*, No. 1:19-cr-567 (N.D. Ill. Feb. 3, 2020), ECF No. 85. Ultimately, the defendant had a trial that finished in September 2021 in the E.D.N.Y. and a trial that finished in September 2022 in the N.D. Ill. *See* Jury Verdict, *United States v. Kelly*, No. 1:19-cr-286 (E.D.N.Y. Sept. 27, 2021), ECF No. 238; Jury Verdict, *United States v. Kelly*, No. 1:19-cr-567 (N.D. Ill. Sept. 14, 2022), ECF No. 335.

Such simultaneous prosecutions present enormous practical challenges and are heavily disfavored. *See, e.g.*, *United States v. Ellis*, 622 F.3d 784, 791 (7th Cir. 2010) (explaining that simultaneous prosecutions "generally throw parallel prosecutions into confusion and disarray" (cleaned up) (quoting *United States v. Thomas*, 55 F.3d 144, 150–51 (4th Cir. 1995))); *United States v. Jones*, 91 F.3d 5, 8 (2d Cir. 1996) ("As the Supreme Court has noted, a defendant

cannot be tried in different districts at the same time." (citing *Beavers v. Haubert*, 198 U.S. 77, 86 (1905))); *United States v. Nesbitt*, 852 F.2d 1502, 1513 (7th Cir. 1988) ("[I]t is nigh unto impossible for a defendant to prepare for two judicial proceedings simultaneously."). These concerns are greatly compounded by the fact that Zambada has open indictments with complex charges in at least six federal judicial districts. If defending against two simultaneous prosecutions is "nigh unto impossible," *Nesbitt*, 852 F.2d at 1513, the notion that someone could defend against six is absurd.

To be sure, the Government has not asked to shuttle Zambada back and forth to face charges in the W.D. Tex. and the E.D.N.Y. simultaneously, much less in all six jurisdictions. Reply 4. But that only highlights a distinction between the Government's request here and the procedure in the *Kelly* case. And that is the fourth and final reason for which *Kelly* is unpersuasive. The Government asks that Zambada be transferred to the E.D.N.Y. and detained and prosecuted there "prior to continuing with the [W.D. Tex.] charges." Mot. 3. The *Kelly* Minute Entry directed that the defendant be transferred to the E.D.N.Y. for a period of less than two months and returned to the N.D. Ill. for his next hearing there. In addition to the several other reasons that make it unpersuasive on its own terms, *Kelly*'s authorization of a short-term transfer does not provide a basis for the long-term transfer sought by the Government in this case.

      **2.**    **The *Mulligan* Case**

Apart from *Kelly*, the only other example that the Government points to of a defendant being arrested in one district and transferred to another is *United States ex rel. Kassin v. Mulligan*, 295 U.S. 396 (1935). That case, which predated the enactment of Rule 5, involved a defendant who had been indicted for violations of federal criminal law in the Southern District of

12

Florida ("S.D. Fla."). *Id.* at 398. He was found and arrested in the Southern District of New York ("S.D.N.Y.") and brought before a Commissioner—the forerunner of the modern magistrate judge—in the S.D.N.Y. for an initial appearance. *Id.* The Supreme Court held only that, having established the defendant's identity and the existence of the S.D. Fla. indictment against him, he must be transferred to the custody of the S.D. Fla. *Id.* at 400. The Government does not argue, and there is no indication from the Supreme Court's opinion, that the *Mulligan* defendant faced any charges in the S.D.N.Y. In this way, *Mulligan* is just the sort of routine out-of-district-arrest case that Zambada's is not. Mulligan was arrested in the S.D.N.Y. on S.D. Fla. charges and sent to the S.D. Fla. Zambada, instead, was arrested in the W.D. Tex. on W.D. Tex. charges, and for the reasons discussed above, Rule 5 is not the appropriate vehicle with which to now transfer him to the E.D.N.Y. *Mulligan* is simply inapposite, and thus does not change that conclusion.

### 3. Additional considerations

The Government also appeals to generalized notions of prosecutorial discretion, arguing that it may, without "articulat[ing] any reason for the presentment on one warrant or another when there are numerous to choose from," invoke Rule 5 to transfer Zambada to E.D.N.Y. and prosecute him there. Reply 3. The Government argues that it should not be Zambada, nor the "happenstance" of his place of arrest, that dictates the venue of his prosecution. *Id.* at 2.

Certainly, the Government had the authority to elect the federal judicial districts in which to indict Zambada in the first place. *United States v. Salinas*, 373 F.3d 161, 163 (1st Cir. 2004) ("The government initiates criminal prosecutions and, thus, has first crack at selecting the venue."). But the Government's choice of venue for criminal prosecutions is not entirely "free from any external constraints." *Id.* at 169. And the Government's appeal to general background

13

principles does not justify the misapplication of specific, technical procedures under Rule 5.

The Government—in a broad sense, including federal law enforcement officers—also had the initial discretion to choose which among various outstanding arrest warrants to execute when they took Zambada into custody. *See* Fed. R. Crim. P. 4(c)(2) (noting that federal arrest warrants "may be executed" anywhere "within the jurisdiction of the United States"). Zambada was arrested on the W.D. Tex. warrant, and he was therefore brought promptly before a magistrate judge for a Rule 5 initial appearance on the W.D. Tex. charges. Notwithstanding the Government's generalized right to elect the venue for its prosecutions, as discussed above, the Government provides no binding or persuasive authority for the proposition that Rule 5 offers a vehicle with which to accomplish a change of venue at this stage.

Finally, the Court addresses two additional assertions in the Government's briefing. First, the Government references "unique security demands attendant to housing and transporting this defendant." Reply 4. This remark appears to imply that officials in the W.D. Tex. are unable to competently detain Zambada here. The Court rejects any such implication. The eminent detention and security personnel in this District have, by all accounts, administered Zambada's custody effectively and securely. This is unsurprising for the W.D. Tex., which handled more criminal defendants in 2023 than any other federal judicial district in the United States, including many defendants with alleged cartel affiliations and other heightened security concerns.

Second, the Government states that it intends to move Zambada to the E.D.N.Y. "so that [he] will face justice and full accountability for *all* the crimes in these indictments, and for his uncountable victims in this district and in every district across the nation." Reply 2. This appears to suggest that the charges pending in the E.D.N.Y. are more representative of the full

14

scope of Zambada's alleged crimes, that they are more important than the charges pending here, or that they should otherwise take precedence. In both the E.D.N.Y. and the W.D. Tex., Zambada is charged with narcotics trafficking, illegal firearms possession, money laundering, and engaging in a continuing criminal enterprise. But only in the W.D. Tex., and not in the E.D.N.Y., is Zambada also charged with ordering the murder of four identified victims. Indictment 25 (charging Zambada with the murders of S.S., R.M.V., J.M.V., and G.M.A.). This underscores the particularly acute impacts that Zambada's alleged criminal operation has had for the community of the El Paso Division of the W.D. Tex.

For present purposes, the Court need only conclude that the Government's appeal to the relative severity of the charges is immaterial to the appropriateness of a Rule 5(c)(3) initial appearance and transfer. Indeed, the Government offers no authority for a rule that the most important indictment goes first. Nor does the Government cite any caselaw authorizing a Rule 5(c)(3) transfer on the grounds that the defendant poses a security risk. Therefore, neither of the Government's suggestions alters the conclusion that Rule 5 does not authorize the Court to hold an initial appearance and transfer on Zambada's E.D.N.Y. charges.

### C.     Other Procedures

This is not to say that there are no means at the Government's disposal with which to accomplish its stated goal of transferring Zambada to the E.D.N.Y. to face charges there before or in lieu of prosecution in the W.D. Tex. For example, the Government may seek issuance of a writ of habeas corpus ad prosequendum from the E.D.N.Y. *See, e.g.*, *United States v. Kelly*, 661 F.3d 682 (1st Cir. 2011). Or the Government may move to dismiss the W.D. Tex. charges. Fed. R. Crim. P. 48(a) ("The government may, with leave of court, dismiss an indictment, information, or complaint."). If dismissal of the W.D. Tex. charges were granted, the

Government could then execute the E.D.N.Y. arrest warrant, at which point a Rule 5 initial appearance on the E.D.N.Y. charges would need to be held "without unnecessary delay." Fed. R. Crim. P. 5(a)(1)(A).

The Court's rejection of the Government's Rule 5 request is not rendered pedantic by the likely availability of alternative procedures. Giving the Government unfettered discretion to transport defendants to face charges whenever and wherever it chooses threatens to greenlight prosecutorial harassment. *See United States v. Salinas*, 693 F.2d 348, 351 (5th Cir. 1982). Each procedure—dismissal, writ, etc.—thus carries its own limitations and safeguards. And careful attention to procedure ensures that the appropriate safeguards are applied. The Court does not suggest any particular course of action to the Government. But regardless of how the Government proceeds, Zambada will retain the right to raise any opposition he may have. He may, for example, file a response to a motion to dismiss the W.D. Tex. charges, or move to quash or limit a writ from the E.D.N.Y. Of course, he may also elect not to do so. The Court will consider any subsequent request by the Government in due course, in light of any opposition and under the particular, applicable standard.

## III.    CONCLUSION

For the reasons discussed above, the Government's Motion, ECF No. 1324, is **DENIED**. The request to schedule an initial appearance on the E.D.N.Y. charges is **DENIED**, and the request to exclude time spent prosecuting the case in the E.D.N.Y. from the Speedy Trial Act calculations in this case is **DENIED** as **MOOT**.

**SO ORDERED.**

**SIGNED this 4th day of September, 2024.**

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE